# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Intact Insurance Group USA LLC,
Intact Services USA LLC, and
Atlantic Specialty Insurance Company,

    Plaintiffs,     Civil Case No.:  0: 24-cv-01721

v.

Applied Underwriters, Inc., a/k/a
Applied Underwriters Services, Inc.,
and Mark Atkins

    Defendants.

## COMPLAINT

Plaintiffs, Intact Insurance Group USA LLC ("Intact Insurance"), Intact Services USA LLC ("Intact Services"), and Atlantic Specialty Insurance Company ("ASIC") (collectively, "Intact"), as and for their Complaint ("Complaint") against Defendants Applied Underwriters, Inc. ("Applied Underwriters"), and Mark Atkins ("Atkins") (collectively, "Defendants"), allege as follows:

## INTRODUCTION

1. This Action arises out of Applied Underwriter's aggressive and unlawful raid of Intact's commercial surety group covering the western United States, with the aid and support of that group's former leader, Senior Vice President Mark Atkins. Rather than compete fairly in the marketplace by hiring and training its own talent or by paying fair market value for an existing business unit, Applied Underwriters instead tortiously interfered with Atkins' contractual obligations to Intact and coordinated with him—while he remained employed by Intact—to steal away Atkins' entire team of surety underwriters through a coordinated group resignation and confidential and proprietary account lists and other Intact work product. Though Intact is still

1

investigating the full extent of Atkins' and Applied Underwriters' conduct, it has already suffered significant harm and will continue to suffer harm due to Applied Underwriter's and Atkins' unlawful acts unless they are enjoined from continuing.

## PARTIES, JURISDICTION, AND VENUE

2.     Intact Services is a limited liability company organized under the laws of the State of Delaware.  Its sole member is Intact Insurance.

3.     Intact Insurance is a limited liability company organized under the laws of the State of Delaware, registered to do business in Minnesota as Intact Insurance Holdings Group USA LLC.  Its sole member is Intact U.S. Holdings Inc., which is a corporation organized under the laws of the State of Delaware with its principal place of business in Minnesota.

4.     ASIC is an insurance company organized under the laws of the State of New York with its principal place of business in Minnesota.

5.     Accordingly, for the purposes of assessing diversity jurisdiction, the Intact Plaintiffs are citizens of Delaware, New York, and Minnesota.

6.     Atkins is a citizen and resident of the State of Washington.  Intact Services employed Atkins in Washington starting in or about January 2015.

7.     Applied Underwriters is a privately held company formed under the laws of the State of Nebraska, and its principal place of business is located in Omaha, Nebraska.  Applied Underwriters also maintains operations in the State of Minnesota.  It is registered to do business in Minnesota with the Minnesota Secretary of State under the Minnesota business name Applied Underwriters Services, Inc., and is subject to the personal jurisdiction of this Court.

8.     Atkins has announced his resignation from Intact for employment with Applied Underwriters, which is a direct competitor of Intact.

2

9.      This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because the Intact Plaintiffs are citizens of the States of Delaware, New York, and Minnesota, and the Defendants are citizens of Washington and Nebraska.

10.     This is an action in which the amount in controversy exceeds $75,000.00.

11.     This Court also has jurisdiction over this matter under 28 U.S.C. § 1331 because Intact asserts claims under the Defend Trade Secrets Act, 28 U.S.C. § 1836, *et seq.*

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Intact's claims brought under state law.

13.     This case is properly venued in the United States District Court for the District of Minnesota under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or, in the alternative, because both Applied Underwriters and Atkins are subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

### Intact's Business

14.     Intact Insurance and Intact Services are each corporate affiliates of Intact Financial Corporation ("IFC"), the largest provider of property and casualty insurance in Canada, a leading specialty lines insurer with international expertise, and a leader in commercial lines in the U.K. and Ireland.

15.     The insurance-company subsidiaries of Intact Insurance, including ASIC, offer specialty insurance in the United States under the marketing brand Intact Insurance Specialty Solutions.  Relevant here, Intact's surety business unit offers surety solutions in the form of contract and commercial bonds to a wide range of customers, from Fortune 500 companies to small private companies.

16.     The commercial surety business is increasingly competitive.  Success or failure of an organization is based on the organization's employment and customer relationships, goodwill in the commercial surety industry, and use of confidential information and trade secrets, including client lists, strategic planning, underwriting, reinsurance, ratings, and pricing.

17.     Accordingly, Intact took reasonable steps to safeguard its relationships and the secrecy of this information.  Yet Applied Underwriters and Atkins coordinated and are continuing to coordinate an employee raid to obtain and use Intact's trade secrets and confidential information.  On information and belief, Applied Underwriters, Atkins, and several of Atkins' former subordinate employees at Intact are now using and/or preparing to use Intact's confidential information and trade secrets to, among other things, solicit Intact's clients and unfairly obtain broker referrals.

**Atkins' Employment with Intact and Access to Confidential Information**

18.     Intact Services employed Atkins as its Senior Vice President and Regional Manager of Northwest and Southwest Commercial Surety starting in or about January 2015.

19.     The success of the Northwest and Southwest commercial surety division is important to the success and financial results of the surety business unit and Intact as a whole.

20.     Because of the work Atkins performed for Intact, and because of the sensitivity of the information Atkins accessed during his employment, Intact imposed certain confidentiality obligations on Atkins and required Atkins to agree to certain restrictive covenants.  For example, Atkins received several awards under Intact's Long Term Incentive Plan ("LTIP") over the course of his employment.  As a condition of receiving each award, Atkins was required to sign a related Award Agreement that included certain restrictive covenants.  Most recently, Atkins executed a "2023 Award Agreement" in connection with his 2023 LTIP award, which includes a

Confidentiality and Non-Solicitation Agreement.   Atkins' execution of the 2023 Award Agreement expressly included his commitment to abide by the terms of the Confidentiality and Non-Solicitation Agreement.  A true and accurate copy of the Confidentiality and Non-Solicitation Agreement is attached to this Complaint as **Exhibit A** and incorporated herein by reference.

21.     The Confidentiality and Non-Solicitation Agreement contained certain restrictive covenants, which provided that they "shall be governed by and interpreted in accordance with the laws of the State of Minnesota governing a contract made and wholly performed within the State of Minnesota," and Atkins agreed that disputes "concerning or arising out of this Agreement" must be raised in "the state and federal courts in the State of Minnesota."  (**Exhibit A**, Section 6.)

22.     Atkins agreed to certain confidentiality and post-employment restrictive covenants in the Confidentiality and Non-Solicitation Agreement  as consideration for the 2023 LTIP Award.

23.     By signing the 2023 Award Agreement with the Confidentiality and Non-Solicitation Agreement, Atkins agreed to and acknowledged the following restrictions, including restrictions against soliciting Intact employees and customers:

a.  "The Employee agrees that the Employee shall not, directly or indirectly, during the Employee's employment and for a period of two (2) years immediately following the termination of the Employee's employment for any reason whatsoever, solicit or recruit, or be in any way involved in the solicitation or recruitment of, any employee, consultant or independent contractor of the Company, or encourage any such employee, consultant or independent contractor to leave the Company, save and except with the written consent of the Company." (**Exhibit A**, section 2.1.)

b.  "The Employee agrees that, during the Employee's employment and for a period of two (2) years immediately following the termination of the Employee's employment for any reason whatsoever, the Employee shall not, directly or indirectly, solicit any Distributor to distribute insurance or insurance-related products or services or other financial products and services ('Products and Services'), that are the same or similar to products and services available from the Company, on behalf of a competitor of the Company or any third party where the solicitation involves or is for the purpose of inducing or attempting to induce such Distributor to stop doing business with the Company or substantially decrease its

5

business volume with the Company or transfer its portfolio of business with the Company to a competitor." (**Exhibit A**, section 2.2.)

c.  "The Employee agrees that, during the Employee's employment and for a period of two (2) years immediately following the termination of the Employee's employment for any reason whatsoever, the Employee shall not, except in the normal course of general business solicitations that do not specifically target Customers of the Company, directly or indirectly, for the Employee's own account or for the account of a competitor or any third party, solicit a Customer, for the purpose of inducing or attempting to induce such Customer to purchase products or services from a competitor of the Company, that are the same or similar to Products or Services that are available from the Company." (**Exhibit A**, section 2.3.)

d.  "The Employee agrees that, during the Employee's employment and for a period of two (2) years immediately following the termination of the Employee's employment for any reason whatsoever, the Employee shall not, directly or indirectly, solicit any Provider for the purpose of inducing or attempting to induce such Provider (a) to stop doing business with the Company or (b) to substantially decrease its business volume with the Company or (c) to provide Support Products to a competitor of the Company that are the same or similar to Support Products that were in the process of being developed by the Provider for the Company or were supplied to the Company by the Provider on an exclusive basis at any time during the eighteen (18) month period immediately preceding the termination of the Employee's employment." (**Exhibit A**, section 2.4.)

24.     In addition, by agreeing to be bound by the the Confidentiality and Non-Solicitation Agreement, Atkins agreed to and acknowledged the following restrictions on the disclosure or use of Intact's confidential information:

a.  "The Employee agrees to maintain the confidentiality of the Confidential and Proprietary Information at all times and shall not, while employed with the Company or at any time thereafter without the prior written consent of the Company, disclose the Confidential and Proprietary Information in any manner whatsoever to any third party, and shall not use the Confidential and Proprietary Information, directly or indirectly, for any purpose other than the Employee's work for and in the best interests of the Company." (**Exhibit A**, section 1.2.)

b.  "All Confidential and Proprietary Information disclosed or delivered to the Employee prior to and after the execution of this Agreement shall remain the property of the Company and upon demand therefore by the Company, or upon the cessation of the Employee's employment for any reason whatsoever, all Confidential and Proprietary Information in the Employee's possession including all copies thereof, shall be delivered to the Company and further the Employee shall destroy all Confidential and Proprietary Information in non-deliverable form in the

Employee's possession or control, including, without limitation, the deletion of all documentation, information or data from the Employee's system files and storage media." (**Exhibit A**, section 1.3.)

25. Intact also maintains confidentiality policies applicable to all employees in its "Living Our Values" code of conduct (the "Code of Conduct"). A true and accurate copy of Intact's Code of Conduct is attached to this Complaint as **Exhibit B** and incorporated herein by reference.

26. Intact's Code of Conduct states that confidential information includes:

   a. "Any information about our customers or prospective customers, their claims or any third-party claimants."

   b. "Any information about employees and brokers."

   c. "Lists of clients and distributors (including brokers)."

   d. "Our market analysis, business plans and strategy documents."

   e. "Our methodologies, processes, databases, protocols, system applications, etc."

   f. "Product pricing, new products or advertising campaigns in development."

   g. "Projected earnings, actuarial analyses and other financial data."

   h. "Passwords."

   i. "Our confidential Projects."

   j. "Corporate investment strategies."

   k. "Information obtained from third parties, such as brokers, suppliers, service providers, consultants or even from companies we may potentially acquire."

(**Exhibit B**, Code of Conduct, at 9.)

27. Intact employees, including Atkins, receive training on the Code of Conduct.

28. The Code of Conduct is also included in the Intact Employee Handbook, which must be reviewed and acknowledged annually by Intact employees.

**Atkins Coordinates with Applied Underwriters to Lift Out Intact's Entire West Commercial Surety Underwriting Team**

29.     Applied Underwriters is also in the business of commercial surety.  Applied Underwriters and Intact are direct competitors in that business, often competing for the same clients and employees in the same markets.

30.     On information and belief, in or about March 2024, Atkins began conspiring with Applied Underwriters to solicit every single member of Atkins' underwriting team to go work for Applied Underwriters in direct contravention of his non-solicitation obligations.

31.     On information and belief, Atkins shared and/or is planning to share Intact's Confidential and/or Proprietary Information with Applied Underwriters, in violation of his obligations to Intact and in furtherance of Applied Underwriters' goals.

32.     On information and belief, Atkins solicited all six of his direct or indirect subordinates, Patrick Benedict, Nick Green, Jacob Leffel, Sandra "Sandy" Ropka, Mark Neal, and Nolan Steele (collectively, the "Defecting Employees") with the purpose of poaching all of Intact's employees in the large commercial surety business in the west and giving his new employer, Applied Underwriters, an unfair competitive advantage over Intact.

33.     As a result of Defendant Atkins' solicitation and Applied Underwriter's encouragement of Atkins' solicitation, several of the Defecting Employees announced their resignation from Intact within minutes of one another on April 29, 2024, and Intact is informed they have been hired by Applied Underwriters:

      a.  Nick Green e-mailed his resignation to Patrick Benedict at 9:58 a.m. PST, and Benedict forwarded Green's resignation to Atkins at 10:00 a.m. PST;

      b.  Sandra Ropka e-mailed her resignation to Atkins at 10:00 a.m. PST;

c. Jacob Leffel e-mailed his resignation to Patrick Benedict at 10:01 a.m. PST, and Benedict forwarded Leffel's resignation to Atkins at 10:02 a.m.;

d. Patrick Benedict e-mailed his resignation to Atkins at 10:04 a.m. PST;

e. Mark Neal resigned at 11:04 a.m. PST;

f. After drafting a resignation e-mail that he never sent, Atkins waited until 12:10 p.m. PST to call and inform his manager, the President of U.S. Commercial Surety, of the resignations and then called again at 12:21 to tender his own resignation (during which call he falsely disclaimed any advance knowledge of the resignations);

g. The President of U.S. Commercial Surety confirmed with Nolan Steele, who had not tendered a formal resignation notice (but whom Atkins had reported was resigning), that Steele was resigning at 1:58 p.m. PST on April 30, 2024.

34.     Atkins, as the Senior Vice President and Regional Manager of Northwest and Southwest Commercial Surety, had a duty of loyalty to advise his superiors of matters they would want to know, including possible resignations by his subordinates. Instead of fulfilling this duty, Atkins did just the opposite—he spent the weeks and months leading up to these resignations coordinating the concealment of these planned departures and going so far as to eliminate the "paper trail" that would disclose the conspiracy.

35.     On information and belief, as early as March 26, 2024, Atkins was meeting with Josh Betz, President of Applied Underwriters, to discuss Atkins' and his team's departure for Applied.

36.     A few days later, on April 3, 2024, Ropka created a recurring meeting invitation called the "One West Brain Trust Pow Wow" with Benedict and Atkins. On information and belief, this meeting was established for the purpose of enabling Atkins' active solicitation of Benedict, Ropka, and the rest of the team to leave Intact for Applied.

37.     On or about April 21, 2024, Defendant Atkins and several of the Defecting Employees begin deleting thousands of e-mails and files per day from their Intact computer

systems, many of which dated back several years.  These deletions occurred from their "deleted items" folder in their respective email programs—in other words, these employees believed (incorrectly) they were *permanently* deleting thousands of emails from their email systems.  Upon information and belief, Atkins and the Defecting Employees engaged in mass deletions of Intact communications and files to obfuscate their unlawful activity, including misappropriation of Intact confidential information and trade secrets for the benefit of Applied Underwriters, as well as Atkins' solicitation of Intact employees to work at Applied Underwriters.

38.     Upon information and belief, Atkins and the Defecting Employees engaged in the mass deletion of Intact communications to make it more difficult for Intact to service its ongoing and prospective customer accounts in the wake of the Defecting Employees' mass departure, further suggesting the Defecting Employees and Applied Underwriters were acting with the intent of unfairly competing with Intact in the commercial surety business.

39.     On April 23, 2024, Sandy Ropka printed at least 53 paper files.  These files consisted of, among other things, dozens of documents from Intact's bond form library, which consists of proprietary work product developed by Intact for use with its customers.  Ropka also printed an account list of all Intact's commercial surety customers in the Northwest and Southwest and all of the bond amounts currently issued to them.  This report was accessed through Intact's SAM Platform via PowerBI , to which access is limited.

40.     On information and belief, Ropka printed these files at the direction of and/or in cooperation with Atkins and Applied Underwriters, for the sole purpose of enabling Atkins and his team to solicit Intact's customers on behalf of Applied Underwriters.

41.     Additionally, in the days leading up to their resignation, Ropka, Benedict, and other Defecting Employees engaged in an unusual pattern of behavior regarding their access to various

internal and third-party systems.  On information and belief, they were accessing these systems for the purpose of obtaining information that would assist themselves and Applied Underwriters in soliciting away Intact's customers.

42.    A preliminary examination of Intact's servers was able to recover over 1,000 e-mails that Sandra Ropka had deleted, over 8,700 e-mails that Patrick Benedict had deleted, and over 4,600 e-mails that Atkins had deleted alone—all within the 30 days prior to their April 29, 2024, departures.

43.    On April 22 and 26, 2024, Defendant Atkins sent e-mails asking for information regarding his long-term incentive compensation.  Atkins also created an entry in his Intact Outlook Calendar to "sell LTIP" shares the week before his departure.  And Atkins did, in fact, sell all of his LTIP shares the week before he resigned, in violation of the terms of Intact's Stock Ownership Requirements that applied to continued ownership of LTIP shares during active employment.

44.    Defendant Atkins used his senior position and supervisory authority to recruit Intact employees into a common scheme, orchestrated with Defendant Applied Underwriters, with the goal of creating an unfair competitive advantage for Applied Underwriters.

45.    In other words, in one fell swoop, Applied Underwriters and Atkins decimated Intact's commercial surety group in the West.

46.    Defendant Atkins acted for the benefit of Applied Underwriters at the expense of his employer, Intact.  In doing so, Defendant Atkins breached his duty of loyalty to Intact.

47.    On information and belief, Applied Underwriters agreed to provide an equity percentage to Atkins and the Defecting Employees, as well as heightened authority to seal transactions and business deals, suggesting further that Applied Underwriters's purpose was to cripple or destroy Intact's commercial surety group in the West and to misappropriate Intact's

trade secrets.

48.     Atkins led the Northwest and Southwest commercial surety division of Intact, and thereby supervised the six other Defecting Employees in the department, either directly or indirectly.

## COUNT I – BREACH OF CONTRACT
### *Against Defendant Atkins*

49.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

50.     The 2023 Award Agreement together with its Appendices, including the Confidentiality and Non-Solicitation Agreement, is a valid and enforceable contract.

51.     Defendant Atkins voluntarily entered into the Confidentiality and Non-Solicitation Agreement in consideration for his long-term incentive award provided by Intact.

52.     In the Confidentiality and Non-Solicitation Agreement, Atkins agreed, *inter alia*, to terms imposing a duty of confidentiality and restricting solicitation.

53.     The covenants governing confidentiality and restricting solicitation set forth in the Confidentiality and Non-Solicitation Agreement are reasonable and necessary to protect Intact's legitimate business interests and employment relationships.

54.     Through the actions described above, Atkins has materially breached and continues to breach the express confidentiality and non-solicitation terms of the Confidentiality and Non-Solicitation Agreement that he signed.

55.     By such actions, Atkins has proximately caused and continues to cause Intact immediate and irreparable harm for which Intact has no adequate remedy at law and on account of which it has suffered actual damages.

56.     Atkins will continue such wrongful conduct unless enjoined.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT
*Against Defendant Applied Underwriters*

57.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

58.     On information and belief, at all times relevant to this action, Defendant Applied Underwriters was aware that Atkins was employed by Intact and that his employment with Intact was governed by the Confidentiality and Non-Solicitation Agreement, which Applied Underwriters knew created a valid contractual relationship.

59.     On information and belief, Defendant Applied Underwriters nevertheless coordinated with Atkins with the purpose and intention of soliciting additional employees away from Intact and, in doing so, inducing or ratifying Atkins' countless breaches of the Confidentiality and Non-Solicitation Agreement.

60.     Defendant Applied Underwriters took these actions without justification or privilege, using improper means, and for improper purposes, including and for the purpose of impairing Intact's ability to compete in the marketplace and in order to benefit itself and give itself an unfair competitive advantage.

61.     By such actions, Defendant Applied Underwriters has caused and continues to cause Intact immediate and irreparable harm for which it has no adequate remedy at law and on account of which it has suffered actual damages.

## COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
*Against Defendant Applied Underwriters and Defendant Atkins*

62.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

63.     Through its confidential information, trade secrets, employment relationships,

customer contacts, and goodwill in the commercial surety industry, Intact has a reasonable expectation of economic advantage and valid business relationships or expectancy.

64.     Defendant Applied Underwriters and Defendant Atkins were aware of Intact's reasonable expectation of its economic advantage and valid business relationships or expectancy.

65.     Defendant Applied Underwriters and Defendant Atkins intentionally interfered with Intact's reasonable expectation of its economic advantage and valid business relationships or expectancy by doing business with or attempting to do business with one or more of Intact's existing or prospective customers.

66.     Defendant Applied Underwriters and Defendant Atkins' interference with Intact's prospective economic advantage was unjustified, tortious, and illegal because they relied upon, directly engaged in, and/or substantially assisted and encouraged a breach of Atkins' Confidentiality and Non-Solicitation Agreement, misappropriation of Intact's trade secrets and confidential information, unfair competition, and a breach of Atkins' duty of loyalty and the duty of loyalty of the other Defecting Employees to unfairly poach employees and divert the business of Intact, a direct competitor of Applied Underwriters.

67.     It is reasonably probable that Intact would have realized its economic advantage with its existing and prospective customers were it not for the intentional interference of Defendant Applied Underwriters and Defendant Atkins.

68.     By such actions, Defendant Applied Underwriters and Defendant Atkins have caused and continue to cause Intact damage in an amount to be determined at trial.

69.     In addition to damages, Intact is entitled to injunctive relief to prevent further immediate and irreparable harm caused by Defendant Applied Underwriters and Defendant Atkins's interference with Intact's prospective economic advantage.

14

70.     Defendant Applied Underwriters and Defendant Atkins will continue such wrongful conduct unless enjoined.

## COUNT IV – UNFAIR COMPETITION
*Against Defendant Applied Underwriters*

71.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

72.     Intact and Defendant Applied Underwriters are in direct competition for qualified personnel who are experienced in the business of issuing bonds for customers in the commercial surety space.

73.     Applied Underwriters designed and executed a scheme to solicit and hire Intact's employees with the purpose of obtaining an unfair competitive advantage and accessing Intact's confidential and proprietary information and protected customer relationships.   Applied Underwriters engaged in this conduct to convert Intact's business to Applied Underwriters.

74.     As set out more fully above, Defendant Applied Underwriters engaged in a concerted and organized effort to recruit members of Intact's commercial surety workforce, including Defendant Atkins.  Defendant Applied Underwriters engaged in this recruitment despite being aware of the confidentiality restrictions to which Intact's commercial surety employees are bound.

75.     Defendant Applied Underwriters also engaged in a concerted and organized effort to recruit Defendant Atkins despite being aware of the Confidentiality and Non-Solicitation Agreement to which he is bound.  Defendant Applied Underwriters induced and encouraged Atkins to breach his Confidentiality and Non-Solicitation Agreement and divulge Intact confidential information, including client lists, strategic planning, underwriting, reinsurance, ratings, and pricing, to solicit and convert Intact business.

76.     These acts and practices, as set forth above, were unfair and deceptive means of engaging in trade or commerce and violated public policy in favor of fostering fair competition.

77.     Defendant Applied Underwriters has acted for the purpose of injuring Intact, driving Intact out of the commercial surety business in the western region, and unfairly competing in the marketplace.

78.     Defendant Applied Underwriters's actions were intentional, willful, and malicious.

79.     By such actions, Defendant Applied Underwriters has caused and continue to cause Intact damage in an amount to be determined at trial.

## COUNT V – DECEPTIVE TRADE PRACTICES UNDER THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT

*Against Defendant Applied Underwriters and Defendant Atkins*

80.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

81.     As set out above, Defendants Applied Underwriters and Defendant Atkins set out on a scheme to solicit and hire Intact's employees with the purpose of obtaining an unfair competitive advantage and accessing Intact's confidential and proprietary information and protected customer relationships.  The acts and practices of Defendant Applied Underwriters and Defendant Atkins described herein offend public policy as established by Minnesota law and are unethical, oppressive, and unscrupulous.

82.     Defendant Applied Underwriters and Defendant Atkins's actions constituted unfair methods of competition, and their acts and practices were unfair and unconscionable.

83.     Defendant Applied Underwriters's actions were intentional, willful, and malicious.

84.     As a direct and proximate result of Defendant Applied Underwriters and Defendant Atkins's deceptive trade practices, Intact has suffered irreparable injury and sustained significant

16

damage.  Moreover, Intact is threatened with additional and ongoing injuries, including losing current customers, unless Defendant Applied Underwriters and Defendant Atkins are enjoined and restrained by an order of this Court

85.     Pursuant to Minn. Stat. § 325D.45, Intact is entitled to any or all of the following relief based on Defendant Applied Underwriters's and Defendant Atkins's deceptive trade practices: (i) remedies available under the common law or other statutes of Minnesota, (ii) injunctive relief, (iii) costs, and (iv) attorney fees.

### COUNT VI – MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT OF 2016
*Against Defendant Atkins and Defendant Applied Underwriters*

86.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

87.     The confidential and proprietary information that Intact entrusted to Atkins, specifically Intact's account lists and related information, constitute a trade secret because Intact derives independent economic value from that information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use, and they are subject of efforts that are reasonable under the circumstances to maintain their secrecy.

88.     Due to Atkins' employment, he had direct access to and knowledge of Intact's trade secrets, including Intact's client lists.

89.     The confidential trade-secret information Atkins obtained is related to Intact's products used in interstate commerce.  As explained above, Intact is a national provider of commercial surety services.

90.     Under the Defend Trade Secrets Act of 2016 ("DTSA"), Atkins was prohibited

from misappropriating Intact's trade secrets.

91.     As alleged above, Atkins violated these duties by disclosing Intact's confidential information to Defendant Applied Underwriters to solicit and convert Intact's commercial surety business.

92.     Under the DTSA, Defendant Applied Underwriters was prohibited from misappropriating Intact's trade secrets when they knew or had reason to know that the trade secrets were acquired through improper means, that is, disclosure by Atkins in violation of his Confidentiality and Non-Solicitation Agreement.

93.     Defendant Applied Underwriters misappropriated Intact's trade secrets because it continues to use Intact's confidential information, including Intact's client lists, without express or implied consent of Intact when Applied Underwriters knew or had reason to know that its knowledge of the trade secrets was derived from a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

94.     Defendant Applied Underwriters and Defendant Atkins's actual misappropriation of Intact's trade secrets has been willful and malicious.

95.     As a direct and proximate result of Defendant Applied Underwriters and Defendant Atkins's actual misappropriation of Intact's trade secrets, Intact has suffered irreparable injury and sustained significant damage.  Moreover, Intact is threatened with additional and ongoing injuries, including losing current customers, unless Defendant Applied Underwriters and Defendant Atkins are enjoined and restrained by an order of this Court.

96.     Pursuant to 18 U.S.C. § 1836(b)(3), Intact is entitled to any or all of the following relief based on Defendant Applied Underwriters's and Defendant Atkins's misappropriation of its trade secrets:  (a) injunctive relief for actual or threatened misappropriation; (b) royalties for

Defendants' use of Intact's trade secrets; (c) an injunction requiring Defendants to turn over or destroy any copies of Intact's trade secrets; (d) actual loss caused by the misappropriation of its trade secrets, in an amount to be proven at trial; (e) damages for the unjust enrichment caused by the misappropriation of Intact's trade secrets; (f) exemplary damages in an amount up to twice the amount of Intact's actual damages; and (g) attorney fees.

### COUNT VII – MISAPPROPRIATION OF TRADE SECRETS UNDER THE MINNESOTA UNIFORM TRADE SECRETS ACT
*Against Defendant Applied Underwriters and Defendant Atkins*

97.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

98.     Intact incorporates herein by reference the allegations of the preceding paragraphs.

99.     As alleged above, the confidential and proprietary information that Intact entrusted to Atkins, specifically Intact's client lists, constitute a trade secret because Intact derives independent economic value from that information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use, and they are subject of efforts that are reasonable under the circumstances to maintain their secrecy.

100.    Due to Atkins's employment, he had direct access to and knowledge of Intact's trade secrets, including Intact's client lists.

101.    The confidential trade-secret information Atkins obtained is related to Intact's products used in interstate commerce.  As explained above, Intact is a national provider of commercial surety services.

102.    Under the Minnesota Uniform Trade Secrets Act ("MUTSA"), Atkins was prohibited from misappropriating Intact's trade secrets.

103.    As alleged above, Atkins violated these duties by disclosing Intact's confidential information to Defendant Applied Underwriters to solicit and convert Intact's commercial surety business.

104.    Under the MUTSA, Defendant Applied Underwriters was prohibited from misappropriating Intact's trade secrets when they knew or had reason to know that the trade secrets were acquired through improper means, that is, disclosure by Atkins in violation of the terms of his Confidentiality and Non-Solicitation Agreement.

105.    As alleged above, Defendant Applied Underwriters misappropriated Intact's trade secrets because it continues to use Intact's confidential information, including Intact's client lists, without express or implied consent of Intact when Applied Underwriters knew or had reason to know that its knowledge of the trade secrets was derived from a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

106.    Defendant Applied Underwriters and Defendant Atkins's actual misappropriation of Intact's trade secrets has been willful and malicious.

107.    As a direct and proximate result of Defendant Applied Underwriters and Defendant Atkins's actual misappropriation of Intact's trade secrets, Intact has suffered irreparable injury and sustained significant damage.  Moreover, Intact is threatened with additional and ongoing injuries, including losing current customers, unless Defendant Applied Underwriters and Defendant Atkins are enjoined and restrained by an order of this Court.

108.    Pursuant to Minn. Stat. § 325C.03, Intact is entitled to any or all of the following relief based on Defendant Applied Underwriters's and Defendant Atkins's misappropriation of its trade secrets: (a) injunctive relief for actual or threatened misappropriation; (b) royalties for Defendants' use of Intact's trade secrets; (c) an injunction requiring Defendants to turn over or

destroy any copies of Intact's trade secrets; (d) actual loss caused by the misappropriation of its trade secrets, in an amount to be proven at trial; (e) damages for the unjust enrichment caused by the misappropriation of Intact's trade secrets; (f) exemplary damages in an amount up to twice the amount of Intact's actual damages; and (g) attorney fees.

### COUNT VIII – BREACH OF EMPLOYEE DUTY OF CONFIDENTIALITY
*Against Defendant Atkins*

109.    Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

110.    As an employee of Intact, Atkins owed Intact a duty not to disclose Intact's confidential information, including information about Intact customers or prospective customers, their claims or any third-party claimants; information about employees and brokers; lists of clients and distributors (including brokers); Intact's market analysis, business plans, and strategy documents; Intact's methodologies, processes, databases, protocols, systems applications, and similar information; product pricing new products, or advertising campaigns in development; projected earnings, actuarial analyses, and other financial data; passwords; Intact's confidential projects; corporate investment strategies of Intact; and information obtained from third parties, such as brokers, suppliers, service providers, consultants, or companies that Intact may potentially acquire.

111.    By virtue of his employment at Intact, Atkins had direct access to and knowledge of troves of Intact's confidential information.

112.    Atkins knew or should have known that information obtained by virtue of his employment, including the information stated above, was confidential.

113.    Intact took measures that were reasonable under the circumstances to protect its confidential information from unauthorized disclosure.

114.    Defendant Atkins misappropriated Intact's confidential information because he disclosed Intact's confidential information to Applied Underwriters without express or implied consent of Intact to solicit and convert Intact's commercial surety business, thereby violating the duty of confidentiality Atkins owed to Intact.

115.    As a direct and proximate result of Atkins's actual misappropriation of Intact's confidential information, Intact has suffered irreparable injury and sustained significant damage. Moreover, Intact is threatened with additional and ongoing injuries, including losing current customers, unless Defendant Atkins is enjoined and restrained by an order of this Court.

### COUNT IX – AIDING AND ABETTING BREACH OF EMPLOYEE DUTY OF CONFIDENTIALITY
*Against Defendant Applied Underwriters and Defendant Atkins*

116.    Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

117.    Defendant Atkins and the other Defecting Employees, as employees of Intact, owed a duty to Intact not to disclose Intact's confidential information, including the information stated above.

118.    By virtue of their employment at Intact, the other Defecting Employees had direct access to and knowledge of Intact's confidential information.

119.    The Defecting Employees knew or should have known that information obtained by virtue of their employment, including the information stated above in paragraph 104, was confidential.

120.    Intact took measures that were reasonable under the circumstances to protect its confidential information from unauthorized disclosure.

121.    The Defecting Employees misappropriated Intact's confidential information

22

because they disclosed Intact's confidential information to Applied Underwriters without express or implied consent of Intact to solicit and convert Intact's commercial surety business, thereby violating the duty of confidentiality the Defecting Employees owed to Intact.

122.    Defendant Applied Underwriters and Defendant Atkins were specifically aware that the Defecting Employees were in breach of their duty of confidentiality, as they were aware that the Defecting Employees were providing Intact's confidential and trade-secret information to Applied Underwriters.

123.    Defendant Applied Underwriters and Defendant Atkins substantially assisted the Defecting Employees in their breach of their duty of confidentiality.

124.    Defendant Applied Underwriters and Defendant Atkins acted for the purpose of injuring Intact in order to benefit themselves, and Intact has suffered damages as a result of Defendant Applied Underwriters and Defendant Atkins's actions.

125.    Defendant Applied Underwriters and Defendant Atkins's actions were intentional, willful, and malicious

### COUNT X – BREACH OF EMPLOYEE DUTY OF LOYALTY,
*Against Defendant Atkins*

126.    Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

127.    Intact and Defendant Applied Underwriters are in direct competition for qualified personnel who are experienced in the business of issuing surety bonds and for customers in the commercial surety space.

128.    Defendant Atkins had a duty of loyalty to Intact and breached his duty of loyalty by, while still employed by Intact, engaging in acts of secret competition intended to assist himself and Defendant Applied Underwriters, including but not limited to providing Defendant Applied

Underwriters with Intact's confidential information and trade secrets; soliciting Intact's employees for employment with Applied Underwriters; and soliciting Intact's customers to do business with Applied Underwriters.

129.     Defendant Atkins has acted with the purpose of injuring Intact, which has suffered damages as a result of Defendant Atkins's actions.

130.     Defendant Atkins's actions were intentional, willful, and malicious.

### COUNT XI – AIDING AND ABETTING BREACH OF EMPLOYEE DUTY OF LOYALTY
*Against Defendant Applied Underwriters and Defendant Atkins*

131.     Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

132.     Defendant Applied Underwriters was aware of Defendant Atkins's breach of his duty of loyalty to Intact and provided substantial assistance and encouragement to him in such breach.  Through its conduct, Defendant Applied Underwriters made it easier for Defendant Atkins to breach his duty of loyalty to Intact.

133.     Likewise, Defendant Atkins was aware of the Defecting Employee's breach of their own duty of loyalty to Intact, and Atkins provided substantial assistance and encouragement to the Defecting Employees in their breach of their duty of loyalty, making it easier for the Defecting Employees to breach their duty of loyalty to Intact.

134.     Defendant Applied Underwriters was specifically aware that Defendant Atkins was in breach of his duty of loyalty, as it was aware that he was providing Intact's confidential and trade-secret information to it, that he was soliciting employees of Intact to work for Defendant Applied Underwriters, that he was soliciting customers of Intact to do business with Defendant Applied Underwriters, and that he was performing services for Defendant Applied Underwriters

24

while still employed by Intact.

135.    Defendant Atkins was specifically aware that the Defecting Employees were in breach of their duty of loyalty, as he was aware that they were providing Intact's confidential and trade-secret information to Applied Underwriters, that they were soliciting customers of Intact to do business with Applied Underwriters, and that they were performing services for Applied Underwriters while still employed by Intact.

136.    Defendant Applied Underwriters and Defendant Atkins acted for the purpose of injuring Intact in order to benefit itself, and Intact has suffered damages as a result of Defendant Applied Underwriters's actions.

137.    Defendant Applied Underwriters's actions were intentional, willful, and malicious.

**COUNT XII – CONSPIRACY**
*Against Defendant Atkins and Defendant Applied Underwriters*

138.    Intact restates and incorporates by reference all preceding allegations as though fully set forth herein.

139.    Defendant Applied Underwriters and Defendant Atkins engaged in the unlawful and tortious acts described above in concert with each other pursuant to a common plan or design to, *inter alia*, misappropriate Intact's confidential information and trade secrets, interfere with Intact's customer relationships, and interfere with Intact's contractual relationships with its employees.

140.    Defendant Applied Underwriters and Defendant Atkins knew that their conduct constituted a breach of duty and they agreed to, and did, give each other substantial assistance and encouragement in their unlawful and tortious acts.

141.    Defendant Applied Underwriters and Defendant Atkins agreed to accomplish an unlawful purpose, and/or to accomplish a lawful purpose by unlawful means.

142.    Defendant Applied Underwriters and Defendant Atkins have acted for the purpose of injuring Intact in order to benefit themselves, and Intact has suffered damages as a result of their actions.

143.    Defendants' actions were intentional, willful, and malicious.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Intact respectfully requests that this Court enter a judgment against Defendants granting all relief requested in this Complaint, and/or allowed at law or in equity, including:

1.    An injunction and other appropriate equitable relief that:

    a.    Prohibits Defendant Mark Atkins and Applied Underwriters, Inc. for a period of two (2) years immediately following the termination of Mark Atkins's employment with Intact from directly or indirectly: (i) soliciting or recruiting, or being in any way involved in the solicitation or recruitment of, any employee, consultant, or independent contractor of Intact, or encourage any such employee, consultant, or independent contractor to leave Intact, save and except with the written consent of Intact; (ii) soliciting any distributor to distribute insurance or insurance-related products or services or other financial products and services, that are the same or similar to products and services available from Intact, on behalf of a competitor of Intact or any third party where the solicitation involves or is for the purpose of inducing or attempting to induce such distributor to stop doing business with Intact or substantially decrease its business volume with Intact or transfer its portfolio of business with Intact to a competitor; (iii) except in the normal course of general business solicitations that do not specifically target customers of Intact, solicit a customer for the purpose of inducing or attempting to induce such customer to purchase products and services from a competitor of Intact that are the same or similar to products or services that are available from Intact; and (iv) soliciting any provider for the purpose of inducing or attempting to induce such provider to stop doing business with Intact or to substantially decrease its business volume with Intact or to provide support products to a competitor of Intact that are the same or similar to support products that were in the process of being developed by the provider for Intact or were supplied to Intact by the provider on an exclusive basis at any time during the eighteen (18) month period immediately preceding the termination of Atkins's employment;

    b.    Prohibits Defendant Mark Atkins and Defendant Applied Underwriters, Inc. from directly or indirectly using or disclosing any of Intact's confidential information or trade secrets that were obtained by or from Mark Atkins, Patrick Benedict, Nick

Green, Jacob Leffel, Sandra "Sandy" Ropka, Mark Neal, and Nolan Steele;

    c.    Orders Defendant Mark Atkins and Defendant Applied Underwriters, Inc. to (i) deliver to Intact all Intact confidential and proprietary information in their possession; and (ii) destroy all Intact confidential and proprietary information in non-deliverable form in their possession, including, without limitation, the deletion of all documentation, information, or data from Defendants' files and storage media.

2.    An award of damages against Atkins, including but not limited to contractual and tort damages, in an amount to be proved at trial, believed to be in excess of $75,000.00;

3.    An award of damages against Applied Underwriters, including but not limited to contractual and tort damages, in an amount to be proved at trial, believed to be in excess of $75,000.00;

4.    An award of Intact's costs and pre- and post-judgment interest to the fullest extent permitted by law;

5.    An award of Intact's attorney fees for Defendant Mark Atkins's and Defendant Applied Underwriters, Inc.'s misappropriation of Intact's trade secrets and deceptive trade practices;

6.    An award of punitive damages against Defendant Mark Atkins for his breach of his employee duty of loyalty, against Applied Underwriters, Inc. for its tortious interference with contract, and against both Defendants for their aiding and abetting Intact employees' breach of their duty of loyalty, misappropriation of trade secrets, unfair competition, and conspiracy;

7.    An award of disgorgement of all revenues obtained by Defendant Mark Atkins and Defendant Applied Underwriters, Inc. as a result of their unlawful conduct;

8.    An award of such other and further relief as this Court deems equitable, just, and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Intact demands a trial by jury on all issues of fact and damages.

Dated: May 10, 2024

Respectfully submitted,

*/s/ Samantha M. Rollins Murphy*
SAMANTHA M. ROLLINS MURPHY
Minnesota Bar No. 0400609
samantha.rollinsmurphy@faegredrinker.com
AVERY B. BENNETT
Minnesota Bar No. 0504041
avery.bennett@faegredrinker.com
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN 55402
(612) 766-7000
(612) 766-1600 (FAX)

FAEGRE DRINKER BIDDLE & REATH LLP

*Attorneys for Plaintiffs Intact Insurance Group USA
LLC, Intact Services USA LLC, and Atlantic
Specialty Insurance Company*